UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 2:10-cr-33
HON. ROBERT HOLMES BELL

DAVID RYAN LEMON,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Defendant David Ryan Lemon has moved to suppress statements he made to law enforcement officers after he was arrested and given Miranda warnings. Defendant claims that his statements were involuntary because of his mental capacity. A hearing was held on March 9, 2011. On August 5, 2010, a man entered the First National Bank of Iron Mountain in Iron Mountain, Michigan, and demanded money from the bank's safe. The man had a handgun. The teller placed approximately $24,500.00 into a brown First National Bank bag and gave the bag to the robber. The robber fled the bank. A witness informed police that the robber was inside Storheim's Restaurant near the bank. Police officers surrounded the restaurant. Defendant exited the restaurant holding the First National Bank bag which contained the stolen bank money. After defendant was arrested and searched, a dark-colored handgun was found in his pocket. The gun was an "airsoft" gun that was similar in appearance to a Glock semi-automatic handgun.

At the time defendant was arrested he had blood on his body. Defendant told Deputy Rochon that he had cut his hand opening the box for the gun and that the gun was only a BB gun. Detective Scott Metras informed defendant that he was under arrest. Defendant was read Miranda

rights. Defendant stated that he understood his rights. He stated that he would waive his rights and make a statement. During the five minute interview defendant admitted to robbing the bank. Detective Metras was applying first aid to defendant while the interview took place. He ended the interview when he decided that defendant should go to the hospital. Defendant was taken to the emergency room at the hospital. Defendant was informed that the interview would continue at the hospital.

A counselor approached Detective Metras at the hospital and informed him that defendant was a mental health patient and resided in a group home. Defendant indicated that his mental problems were in remission. Defendant never requested that the interview be stopped. Defendant was cooperative and appeared competent throughout the interview. Defendant never asked for counsel. Defendant received seven stitches in his left palm. At the hospital, defendant stated that he acted alone. He took a cab to Walmart and purchased the gun and knife. Defendant cut his hand while opening the gun package. He decided to go through with the robbery because he believed that a black male with a cut hand would immediately attract police attention. Defendant was transported to the Dickinson County Sheriff's Office where he was again questioned. This interview was video-recorded. The recording was played during the hearing and the parties agreed that the Court could review the recording after the hearing. The recording shows that defendant was cooperative and appeared relaxed during the interview. *See* Gov. Exh. 2.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that an interrogation must cease when the person in custody indicates that "he wishes to remain silent."

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point, he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person

> invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice and producing a statement after the privilege has been once invoked.

*Id.* at 473-474.

> As explained later in *Michigan v. Mosley*, 423 U.S. 96, 103 (1975): A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case, to adopt "fully effective means. . .to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored. . . ." 384 U.S. at 479. The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." *Id*. at 474. Through the exercise of his option to terminate questioning, he can control the time at which questioning occurs, the subjects discussed and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*Id.* at 103-104.

An explicit statement of waiver is not invariably necessary to support a finding that the defendant waived his right to remain silent. *See North Carolina v. Butler*, 441 U.S. 369, 375-376 (1979). Waiver cannot be established merely by showing that the accused participated in the interrogation by answering questions posed to him. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). However, waiver can be inferred from the words of the accused and his course of conduct where it is clear that the defendant understood his rights. *Butler*, 441 U.S. at 373. This Court must presume that the defendant did not waive his Miranda rights. *Butler*, 441 U.S. at 373. The burden is on the Government to demonstrate that the defendant knowingly and intelligently waived his right to remain silent and his right to counsel. *Id.*

The government bears the burden of proving by preponderance of the evidence that defendant's waiver was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972); *North Carolina v. Butler*, 441 U.S. 369 (1979). In determining whether or not the waiver was voluntary, the court is required to look at the totality of the circumstances to determine whether or not the police officers engaged in coercive conduct during the interrogation and whether or not the coercive conduct resulted in the incriminating statements. *See Colorado v. Connelly*, 479 U.S. 157 (1986). Factors which should be considered are the location of the questioning, whether Miranda warnings were given, the number of interrogators, the length of questioning, whether or not the defendant was denied food, water or toilet facilities, and whether the police used threats, promises, lies or tricks. In *Connelly*, the court rejected the argument that a defendant's mental state without police coercion was enough to suppress a confession as involuntary. In that case, the defendant suffered from chronic schizophrenia. The voice of God told defendant to confess to the murder. Defendant contacted police and confessed to the murder. The Supreme Court rejected the contention that defendant's mental state alone rendered the confession involuntary. "But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id*. at 164.

In *Daoud v. Davis*, 618 F.3d 525 (6th Cir. 2010), the court explained:

> Daoud contends that he did not knowingly and intelligently waive his Miranda rights when he confessed to his mother's murder and that admitting those statements at trial violated his Fifth Amendment rights. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth v. Eagan*, 492 U.S. 195, 201, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). However, a suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444,

86 S.Ct. 1602. This inquiry "has two distinct dimensions." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran*, 475 U.S. at 421, 106 S.Ct. 1135 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

To be deemed knowing and intelligent, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574, 107 S.Ct. 851. Instead, "we examine 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused,'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir.2009) (alterations in original) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), to determine "whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time,'" *id*. (alterations in original) (quoting *Spring*, 479 U.S. at 574, 107 S.Ct. 851).

\* \* \*

The Supreme Court has never directly addressed under what circumstances a suspect's mental illness can impede his ability to knowingly and intelligently waive his Miranda rights. In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), it clarified that mental illness does not affect the voluntariness prong under *Miranda*. *Id*. at 170, 107 S.Ct. 515. However, *Connelly* did not address whether mental illness can impact the knowing or intelligent prong. *See Moran*, 475 U.S. at 421, 106 S.Ct. 1135. Most courts have recognized that mental illness is a factor to consider in

> determining whether a waiver was knowing and intelligent. *See, e.g., United States v. Cristobal*, 293 F.3d 134, 142 (4th Cir.2002); *see also Hanna v. Price*, 245 Fed.Appx. 538, 543 (6th Cir.2007).

*Id.* at 528-530. *See also Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009).

In this case, defendant argues that his mental condition rendered his statements involuntary and the product of coercion. The government has presented evidence showing that defendant received Miranda warnings and understood the rights that he was waiving. The evidence shows that defendant understood the rights that he was waiving when he spoke with the interviewing officers. There is no evidence that defendant's mental condition on August 5, 2010, had any impact on his ability to knowingly and intelligently waive his Miranda rights. Defendant made statements initially after he was arrested and again while in custody at the Dickinson County Sheriff's Office. There exists no evidence of a coercive environment that could possibly make defendant's confession involuntary. Moreover, the record establishes that defendant's waiver of his rights was knowing and voluntary.

Accordingly, it is recommended that defendant's Motion to Suppress Statements (Docket #20) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 22, 2011